UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

DEVON TAYLOR,

                Petitioner,

– against –

SUPERINTENDANT M. KIRKPATRICK,

                Respondent.

**MEMORANDUM & ORDER**

17-cv-2954 (ERK)

Korman, *J*.:

      In the early hours of October 1, 2009, Officer Veerana Ramayya found Petitioner Devon Taylor riding a bike on a sidewalk in Brooklyn. A chase ensued, and at a certain point, Officer Ramayya apparently saw Taylor toss a gun into a sewer. After a jury trial, Taylor was convicted of criminal possession of a weapon in the second degree under N.Y. Penal Law § 265.03(1)(b), for which he was sentenced to sixteen years to life. The Appellate Division affirmed his conviction, *see People v. Taylor*, 19 N.Y.S.3d 433 (Mem) (2d Dep't 2015), and the Court of Appeals denied leave to appeal, *see People v. Taylor*, 26 N.Y.3d 1150 (2016).

      Taylor now petitions for a writ of habeas corpus under 28 U.S.C. § 2254, asserting four grounds for relief: (1) that the state failed to prove its case beyond a reasonable doubt; (2) that the verdict was against the weight of the evidence; (3) that the prosecutor committed "flagrant misconduct" during summation; and (4) that his trial counsel was ineffective.

## DISCUSSION

      I observe initially that Taylor's ineffective-assistance claim is partially unexhausted. Although the Appellate Division did not discuss it, Taylor did argue in his brief there, albeit rather fleetingly, that his trial counsel was ineffective for failing to object to prosecutorial

1

misconduct during summation. *See* Dkt. No. 6-3 at 39. However, in his habeas petition, Taylor has broadened the scope of his ineffective-assistance claim, arguing that his trial counsel was also ineffective for failing to object to supposedly contradictory testimony by one of the prosecution's key witnesses. Thus, Taylor's ineffective-assistance claim with respect to his lawyer's failure to object to contradictory testimony is unexhausted.

Recognizing this problem, Taylor has moved for a stay and abeyance so he can bring his unexhausted claim in state court via a § 440.10 motion. *See* Dkt. No. 10. In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court explained that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. But *Rhines* also cautioned that "stay and abeyance should be available only in limited circumstances," adding that "the district court would abuse its discretion if it were to grant [the petitioner] a stay when his unexhausted claims are plainly meritless." *Id.* at 277. Because I find that all of Taylor's grounds for federal relief—both the exhausted and unexhausted—are plainly meritless, I deny his motion for a stay and abeyance, and I dismiss his petition in its entirety. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017) (explaining that a district court has discretion, when facing a "mixed petition," to "deny the entire petition on the merits" (internal quotation omitted)).

I. ***The prosecution did not fail to prove its case beyond a reasonable doubt.***

Taylor first argues that the prosecution failed to prove its case beyond a reasonable doubt. The Appellate Division rejected this argument both for a procedural reason—the argument was

unpreserved for appellate review—and on the merits. *See Taylor*, 19 N.Y.S.3d at 433. Because the Appellate Division's procedural ruling, based on N.Y. C.P.L.R. 470.05(2), is an independent and adequate state ground for its decision, Taylor is procedurally barred from raising his sufficiency-of-the-evidence challenge on habeas. *See Whitley v. Ercole*, 642 F.3d 278, 286–87 (2d Cir. 2011). That the Appellate Division also ruled, alternatively, on the merits does not matter. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)). And while Taylor's procedural default can be excused if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), he has not done so here.

Regardless, Taylor's argument fails on the merits. The Supreme Court has made clear that, on federal habeas review, a sufficiency-of-the-evidence claim is "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, "viewing the evidence in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), "[a] reviewing court may set aside the jury's verdict on the ground of insufficiency of the evidence only if no rational trier of fact could have agreed with the jury," *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). And second, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Here, the prosecution presented at least three crucial pieces of evidence to support the conclusion that Taylor possessed a loaded gun with the intent to use it unlawfully against another

person: (1) the eyewitness testimony of Officer Ramayya; (2) Taylor's admissions to a detective; and (3) a recorded phone call that Taylor made while at Rikers.

A. *Officer Ramayya's eyewitness testimony.*

At trial, Officer Ramayya testified that on October 1, 2009, around 1:35 a.m., he was riding in an unmarked police car with Officer Rahim Morris when he saw two people riding their bikes on the sidewalk. Trial Tr. 24:24–25:13, 27:2–6 (Dkt. No. 6-1). Those two men were Taylor and Leroy Hatcher. *Id.* at 28:3–7. The officers approached, and as soon as Officer Ramayya stepped out of the car, Taylor dropped his bike and ran. *Id.* at 29:13–30:11. Officer Ramayya took off in pursuit (Officer Morris went in the opposite direction after Hatcher, *id.* at 127:5–6), and, at a certain point, Officer Ramayya saw Taylor remove a gun "from his waistband area and throw it in the sewer," *id.* at 31:11–12. Eventually Officer Ramayya caught up to Taylor and arrested him. *Id.* at 31:22–32:3. Another officer on scene called the Department of Environmental Protection to scoop out the contents of the sewer, and, indeed, a black and silver gun was found. *Id.* at 34:15–22, 35:7–21. Officer Ramayya testified that it was the same gun that Taylor had thrown into the sewer. *Id.* at 35:24–36:1. And subsequent testimony from Detective Stella Ardizzone, from the Police Department's Forensic Investigation Division, established that the gun was loaded and operable. *See id.* at 222:12–223:20.

B. *The admissions to Detective Bartek.*

The afternoon after Taylor was arrested, Detective John Bartek spoke with him. *Id.* at 328:15–330:4. According to his trial testimony, Detective Bartek gave Taylor "a *Miranda* warning sheet," and Taylor, after reading and initialing each individual warning, signed the bottom of the sheet. *Id.* at 332:16–21. After asking Taylor whether he understood the *Miranda* warnings, *id.* at 336:20–23, Detective Bartek began talking to Taylor, who eventually admitted to carrying a "burner" on the night of his arrest because of "major problems from people in the past

4

living in the Roosevelt Houses," *id.* at 339:10–16. Detective Bartek testified that, based on his professional experience, he understood "burner" to mean a firearm. *Id.* at 339:17–22. Detective Bartek then asked him "where he got it," and Taylor hesitated. *Id.* at 339:25–340:2. Deciding to give Taylor a break from the interrogation, Detective Bartek offered him a cigarette and water, and then stepped out of the room. *Id.* at 340:2–6. But before stepping out, he told Taylor "that any information that he had on this crime or any other crimes that he may know about would benefit him in the long run." *Id.* at 342:12–16. Taylor eventually wrote a statement, in which he "apologiz[ed] for everything [he] put the officers through" on October 1, 2009. *Id.* at 353:12–14. He continued by saying, among other things:

> There's a lot of things that go on in my area that causes for some people to have to keep themselves safe. My girlfriend also just had a miscarriage that made [me] realize how easy it is for my life to end and that stuff scares me. So, still living in the same area I have to be cautious in what I do so I can keep my life. I would rather be in jail then [sic] dead because a few people in the world don't like me for their own reason. I'm scared to die and I don't want to be statistics neither.

*Id.* at 353:14–22.

Detective Bartek, though, was not satisfied, and he told Taylor that "he need[ed] to make another statement to claim responsibility for his actions." *Id.* at 354:20–21. So Taylor wrote out another statement, saying:

> I want to say first that I had the gun that was thrown into the sewer. I also had weed on my possession. A guy I had a problem with got shot in 2002 that felt I had something to do with it. I didn't shoot the guy. Now is for the some [sic] reason and all that's been happening around my neighborhood, shootings, robberies, murders, et cetera. I don't know when I may could've [sic] been on the bad end of any of those crimes, but I didn't want to take any chances with my life. I had no intention on doing any crimes. . . . I totally apologize for having the gun, but with my life on the line nobody will protect yourself like you will.

*Id.* at 355:12–356:3.

5

C. *The recorded call.*

While at Rikers Island, Taylor made a phone call that officers recorded. *Id.* at 207:7–18. The recording was played at trial. *Id.* at 210:7. In it, Taylor said: "[A]nd the joint, that right there, was down the sewer, so I could probably beat that." Dkt No. 6-3 at 17. Taylor then went on to say that he:

> told Elroy,[1] Son, yo, I'm . . . listen, I'm goin' because of you, son, because you want to get this little nigga, son so I'm goin' because of you, son, and I didn't put the shit in Elroy hand because you know how reckless niggas is, son . . . when the time came, son, when we fuckin' got to Green and Broadway, son, them niggas pull up on us, son, I ain't know what to do, son, you already know how my fuckin' mind played tricks, my shit start runnin' crazy, son, I just got off the bike and I start tearin' ass, son. The first thing I could think about was to put that shit down in the sewer, son . . . and now I'm jammed up.

*Id.* at 56; *see also id.* at 17–18.

\* \* \*

This evidence was more than enough to establish Taylor's guilt beyond a reasonable doubt. To be sure, Taylor, at least in his Appellate Division brief, identifies a number of concerns. The problems he notes, however, do not undermine the jury's conclusion.

Taylor highlights a number of discrepancies between Officer Ramayya's testimony at trial and at a pretrial hearing. For instance, at the hearing, Officer Ramayya testified that the gun was silver; at trial, he said it was black. And at the hearing, he testified that Taylor "turned toward him during the chase and lifted a shirt," *id.* at 26; at trial, he said that didn't happen. These discrepancies, however, concern relatively minor details. The jury was entitled to believe Officer Ramayya's testimony that he saw a gun and to ascribe his discrepancies to lapses in memory. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of . . . the credibility of witnesses are for the jury and not grounds for reversal on appeal[.]"). Similarly, Taylor's

---

[1] Presumably, "Elroy" is Leroy Hatcher, who was with Taylor on the night of the crime.

6

argument that Officer Ramayya was not credible because he testified that the area was "well lit," Dkt. No. 6-3 at 24, in contrast to another witnesses' characterization of the lighting as dark, is unavailing. Assessment of lighting can be subjective, and, in any event, a "challenge to the witnesses' credibility cannot support a claim of legal insufficiency on habeas review." *Sanford v. Burge*, 334 F. Supp. 2d 289, 304 (E.D.N.Y. 2004). The same applies to Taylor's argument that Officer Ramayya was not credible because he testified to not initially seeing a gun on Taylor, despite their standing only around five feet apart.

Regarding the recording of his call, Taylor notes that he referred to the item he threw down the sewer as a "joint," which he argues meant marijuana, not a gun. But when hearing that reference in context, a jury could reasonably have found that Taylor actually was referring to a firearm. In the recording, Taylor said he was out that night "to get this little nigga," seemingly suggesting he wanted to hurt someone. Moreover, when talking about the "joint," Taylor said he "could probably beat that," seemingly referring to the criminal charge he was facing, which was for possession of a firearm, not drugs.

And regarding his written statements in the precinct, Taylor argues that the second statement, in which he explicitly admitted to throwing a gun down the sewer, was written at the urging of Detective Bartek and, unlike his first statement and his *Miranda* waiver, was unsigned. But the jury was entitled to believe Detective Bartek that Taylor truthfully wrote the second statement. What's more, although the first statement does not contain an explicit confession, it does strongly suggest that Taylor had a gun that night—he stated that he acted out of fear for his life. And Detective Bartek also testified that Taylor told him he was carrying a "burner" that night.

In sum, the jury had sufficient evidence to conclude beyond a reasonable doubt that Taylor unlawfully had a loaded and functioning gun that night. It was surely objectively reasonable for the Appellate Division to find that as well. That is not to say that the prosecution's case was perfect. As Taylor has pointed out, Officer Morris (Officer Ramayya's partner who returned the gun to the precinct) admitted to dousing the gun in water and bleach before obtaining any fingerprints or DNA samples. Officer Morris also botched the police report for the incident, confusing Taylor with a different suspect. And the photo Officer Morris took of the gun on the day of the incident (October 1, 2009) was dated March 5, 2008. But Officer Morris had explanations for these blunders that the jury was legally entitled to credit. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) ("We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill."). Moreover, Officer Morris's problematic conduct does not undermine the other, significant evidence presented to support the finding that Taylor nonetheless had a gun that night.

Accordingly, Taylor's sufficiency-of-the-evidence argument is meritless.

## II. *Taylor's weight-of-the-evidence claim is not cognizable on habeas.*

Taylor next argues that the verdict was against the weight of the evidence, an argument that was rejected by the Appellate Division, both on a procedural ground and on the merits. *See Taylor*, 19 N.Y.S.3d at 433. The argument fails here, too, because a weight-of-the-evidence-claim—as opposed to a sufficiency-of-the-evidence-claim—is purely a matter of state law based on N.Y. Crim. Proc. Law § 470.15(5) and thus is not cognizable on federal habeas review. *E.g.*, *Medina v. Gonyea*, 111 F. Supp. 3d 225, 232–33 (E.D.N.Y. 2015); *see also* 28 U.S.C. § 2254(d)(1) (stating that a habeas petition cannot be granted unless the state court adjudication "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").

### III. Taylor's prosecutorial misconduct claim is meritless.

Taylor next argues that various comments by the prosecutor during summation constituted "flagrant misconduct." The Appellate Division rejected this argument as "largely unpreserved for appellate review." *Taylor*, 19 N.Y.S.3d at 433. But the Appellate Division also ruled on the merits, holding that "most of [the prosecutor's] remarks were within the broad bounds of permissible rhetorical comment, a fair response to the defendant's summation, or fair comment on the evidence and the reasonable inferences to be drawn therefrom." *Id.* And it further held that "[t]o the extent that any remaining challenged remarks were improper, they were not so egregious as to have deprived the defendant of a fair trial." *Id.* Because the Appellate Division did not clearly identify those objections that were preserved and those that were not, I will proceed to the merits and not apply any procedural bar. *See Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006); *Murray v. Griffin*, 17-cv-26, 2017 WL 2817044, at *8 (E.D.N.Y. June 28, 2017).

The claim fails on the merits. To obtain habeas relief on the ground of prosecutorial misconduct, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This is a high hurdle to overcome; "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id.* (internal quotation marks omitted). Here, Taylor objects to a number of the prosecutor's comments during summation. But upon a review of the record, I cannot disagree with the Appellate Division's conclusion that "most of those remarks were within the broad bounds of permissible rhetorical comment, a fair response to the defendant's summation, or fair comment on the evidence and the reasonable inferences to be drawn therefrom." *Taylor*, 19 N.Y.S.3d at 433; *see also Ely v. Lempke*, 09-cv-5836, 2012 WL 7050432, at *10 (S.D.N.Y. Oct.

9

18, 2012), *report and recommendation adopted*, 09-cv-5836, 2013 WL 544070 (S.D.N.Y. Feb. 11, 2013). For example, Taylor objects to the prosecutor's describing defense counsel's arguments as "non-issues." But that was a fair comment to make in responding to arguments made during the defense's summation that the prosecutor fairly believed did not strike at the heart of the prosecution's case. In any event, none of the prosecutor's conduct so infected the trial as to compromise due process. I observe, in fact, that the judge instructed the jury at least six times during the prosecution's summation that the prosecutor's arguments were just that, not evidence. *See United States v. Wilson*, 967 F. Supp. 2d 673, 683 (E.D.N.Y. 2013) (citing *United States v. Batista*, 684 F.3d 333, 342–43 (2d Cir. 2012)); *cf. Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions[.]").

## IV. *Taylor's ineffective-assistance-of-counsel claim is meritless.*

Taylor's final ground for relief is ineffective assistance of trial counsel. As explained, the Appellate Division has not ruled on this issue, and Taylor seeks a stay and abeyance in order to fully present this argument before the state courts. In his habeas petition, Taylor identifies two ways in which his trial counsel failed to provide effective assistance. First, he argues that his lawyer did not "object to the many instances of contradictory testimony of Officer Ramayya." Pet. 10. And second, he contends that his lawyer failed to specifically object to the instances of alleged prosecutorial misconduct during summation.

I initially observe that Taylor's second ineffective-assistance argument surely would fail in state court. The Appellate Division has already found that the alleged prosecutorial misconduct did not prejudice Taylor, so it certainly would also conclude that Taylor suffered no prejudice from his trial counsel's failure to object to it. Regardless, Taylor's two ineffective-assistance arguments are entirely meritless. To make out an ineffective-assistance claim, Taylor must satisfy the two prongs of the test established in *Strickland v. Washington*, 466 U.S. 688

10

(1984): (1) that his "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. And, in determining what counts as deficient representation, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Taylor's two ineffective-assistance arguments cannot meet this difficult standard. Regarding the first, his lawyer *did* call out the various inconsistencies between Officer Ramayya's testimony at trial and at the pretrial hearing. He highlighted Officer Ramayya's contradictions both on cross examination and during summation. *See, e.g.*, Trial Tr. 76:6–77:24, 394:2–396:5. Indeed, it is difficult to see what more his lawyer could have done. As for the second, the record demonstrates that Taylor's lawyer *did* object, on several occasions, to comments made by the prosecutor during summation. *See, e.g.*, *id.* at 428:1–5, 432:12–20, 444:23–445:6. Though defense counsel did not object to every allegedly improper comment, his failure to do so does not rise to the level of ineffective assistance under *Strickland*. The prosecutor's statements were fair responses to the defense's arguments, and "[w]here the prosecution's summation is appropriate, a failure to object does not constitute ineffective assistance of counsel." *Mazique v. Ercole*, 06-cv-1723, 2008 WL 2884370, at *9 (E.D.N.Y. July 23, 2008) (citing *Cuevas v. Henderson,* 801 F.2d 586, 592 (2d Cir. 1986)). And even if the prosecutor's summation crossed the line at points, "objections, particularly during a prosecutor's summation, are generally considered strategic in nature and therefore not grounds for claims of ineffectiveness." *Persad v. Conway*, 05-cv-4199, 2008 WL 268812, at *15 (E.D.N.Y. Jan. 30, 2008).

Finally, even if I assume, *arguendo*, that counsel acted deficiently in failing to object during summation, there was no prejudice. As I've already explained, the prosecutor's comments themselves, to the extent they were improper, did not deprive Taylor of due process. In light of all the evidence against Taylor, there is "no reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

Taylor's habeas petition, along with his motion for a stay and abeyance, is **DENIED.** I decline to issue a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York  *Edward R. Korman*
August 9, 2018  Edward R. Korman
  United States District Judge